I have an introduction to make for the Court. As Director of the Appellate Litigation Clinic at the University of Virginia School of Law, I'd like to introduce to the Court this morning third-year law student Gene Zwang, who satisfies the requirements for practice before this Court and who has the consent of our client to argue this appeal this morning. Thank you. Thank you. Your students have always done excellent for our courts and we expect no less today. Thank you, Your Honor. May it please the Court. My name is Gene Zwang and I'm representing the appellant, Mr. Oliva. This case is about life or death. Mr. Oliva is seeking asylum or withholding of removal in the United States because his life will be threatened if he loses membership in a particular social group. Significantly, the immigration judge found Mr. Oliva to be credible. At the outset, given the holding in Martina's v. Holder, we believe it is clear that this case is only governed by Skidmore, not Chevron deference. The question of whether Mr. Oliva's asserted groups are particular social groups— I'm sorry, could you say that again? You believe— We believe that this case is governed by Skidmore, not Chevron deference because it was decided by a single-member board. The question of— That's a good belief. Thank you, Your Honor. Wasn't it decided even though by a single-member court premised on holdings decided by a full three-member BIA panel? And if that's the case, isn't that reasoning entitled to Chevron deference? So for our case, it was only a single-member board, but if it had been— But if the reasoning of the panel, the single-member court, was relying on a three-member BIA holding, at least one, maybe others, isn't that reasoning entitled to Chevron deference? Yes, Your Honor. The actual standard that was applied is entitled to Chevron deference. Okay, I just want to be sure that we understand that. Yes. Okay. Thank you. And then the question of whether Mr. Oliva's asserted groups are particular social groups is a question of law that should be reviewed de novo. This issue has been made clear by numerous circuit court decisions and by the board. Given the severe consequences that the outcome of this case could have on Mr. Oliva's life, he requests that this court remand his case to the board. As this case comes before the court, Mr. Oliva must prove two elements. One, that he is a member of a particular social group, and two, that he is at risk of persecution on account of his membership in a particular social group. Mr. Oliva belongs to two particular social groups. One, Salvadorans who are former members of MS-13 and who left the gang without its permission for moral and religious reasons. Group two is the same, with the addition that the individual left the gang as a minor. These three groups meet the requirement—these two groups meet the three requirements of particularity and social distinction. Given the 24 holding in Martinez v. Holder— Well, being a minor is not immutable, is it? No, Your Honor. But we have included the minor requirement because it is generally accepted in the law that minors have diminished legal capacity. And because the relevant facts include Mr. Oliva joining and leaving the gang as a minor, we have included the second group. Given the 24 holding in—2014 holding in Martinez v. Holder, it is clear that former gang membership meets the mutability requirement. The standard for particularity has been further explained in MEVG and WGR, and Mr. Oliva argues that his groups clearly meet that standard. I will now move on to the issue of social distinction. As clarified in MEVG and WGR, for a group to be socially distinct, society must perceive, consider, or recognize members as sharing the particular characteristics of the group. In its social distinction analysis, the Board mistakenly focused on actual treatment of group members by society at large, referring only to Mr. Oliva's assertion of employment discrimination. As a result of focusing on actual treatment, the Board failed to consider all of the evidence regarding social distinction. The government concedes this, and states that, quote, ordinarily remand would be warranted for the Board to address the unaddressed arguments and evidence Oliva raised, page 50. Mr. Oliva has provided sufficient evidence to show that Salvadoran society recognizes his groups as distinct. Furthermore— So the crux is nexus? Well, Your Honor, the government acknowledges that remand would typically be appropriate, but denies Mr. Oliva a remand based on the nexus analysis. So if you prevail on nexus, the case goes back, correct? On the government's concession? Yes, Your Honor. Would the Court like me to move on to nexus? Only if you want to. I'm going to continue with social distinction for— Well, why don't we talk about nexus? You can come back to that if you want. Okay. So to meet the nexus element, the applicant must only show that one central reason for his persecution was or will be his status as a member of a particular social group. The government wrongly implies that group membership must be the only central reason for persecution. In its nexus analysis, the Board misunderstood the relationship between group membership and the tribute requirement, which prevented it from recognizing the central motivational role that Mr. Oliva's group membership played in his persecution. I'm not sure it's correct to say the Board misunderstood it. They just disagreed, didn't they, with the contrary argument? Well, Your Honor, the Board mistakenly found that Mr. Oliva was targeted as an active member of the gang who violated the gang's rules, and it overlooked the fact that only inactive members of the gang are required to pay tribute. Furthermore, MS-13— Isn't that true? Isn't it true that only inactive members on account of religious beliefs are required to pay tribute? Yes, Your Honor, but the Board in its nexus analysis treated Mr. Oliva as an active member who violated the gang's rules, not as an inactive member who violated the gang's rules for inactive members. But I thought only inactive members have to pay tribute. Is that not correct? Yes, Your Honor. Yes, it's correct, or yes, it's incorrect? Only inactive members are required to pay tribute. They're required both to entrench themselves in the church or to start a family, and then also to pay tribute. So maybe I misheard you, but I thought you said the Board treated him as an active member. Right. The Board said that Mr. Oliva was targeted by the gang's desire to enforce their code of conduct and to punish infidelity and cited to WGR. And then the government implies that Mr. Oliva was only targeted for the work because he did not pay tribute. However, the Board failed to consider crucial evidence in the record in which Mr. Oliva was targeted by the gang without the gang even mentioning his failure to pay tribute. Four years after Mr. Oliva fled El Salvador, the gang tracked down his phone number and sent him threatening calls, text messages, and voicemails. And in these messages, the gang explicitly told Mr. Oliva that his life was being threatened because he left the gang. Mr. Oliva testified, quote, They have told me that if I cross the border back into El Salvador, they will kill me as punishment for trying to quit. And Mr. Oliva also received these threats while living in El Salvador, in which he was explicitly targeted for trying to exit the gang and not just for a failure to pay tribute. Well, I don't know about that. I mean, the whole reason why he's being targeted is because he failed to pay. Had he continued to pay, he would have been just fine. Well, Your Honor, Mr. Oliva's requirement to pay tribute is distinguishable from the random acts of extortion that MS-13 commits against Salvadoran society. So while MS-13 targets transit workers and local business owners for the major financial resources they can provide, they did not target him for any other reason besides his status as a group member. Therefore, his tribute requirement was a key part of his inactive status. A U.S. Department of State paper notes that gangs have killed individuals who have pretended to use religious conversion to leave the gang. And Mr. Oliva stated in his affidavit that if the gang does not, quote, believe that you have been really drawn to God and you do not sincerely follow all the rules of religion, then they will kill you for trying to escape, unquote. One can infer that if an inactive member continued to pay tribute, but failed to show to the gang's satisfaction that he was sincerely committed to the church, that he would be persecuted with the same motivation that Mr. Oliva was. Failure to follow the gang's rules for former members who have left for religious reasons. Therefore... Let me focus at least on that point. That is, it seems as though our determination is that no rational, final fact could reach this conclusion, even though some could and some cannot. And it seems to turn upon the fact that there was a pay to pay ramp. You say it's inextricably tied in with the religious and the moral aspect of it. But it seems as though there's evidence at least that shows that even if he didn't have those religious reasons or moral reasons and didn't pay the rent, he would have suffered the same fate. Well, Your Honor, those are not the facts of our case. And also, Nexus is a fact, is an inquiry of fact. And because the board failed to consider all the evidence, for instance, the messages that he received in the United States where there was no mention of tribute at all, we feel that the Nexus analysis has been wrongly dealt with in the board's analysis. It's very important that the evidence was missed in the fact-finding Nexus analysis. So therefore, we believe that the issue of Nexus should be remanded. Are you absolutely confident and comfortable with the idea of the Nexus analysis being a question of fact as opposed to a question of law on the circumstances of this case? In other words, it's a fascinating set of circumstances, if I understand the record. He's not paying tribute. Putting aside for one moment the sincerity and robustness, for want of a better word, of his religious commitment, it seems to me an argument can be made that the question of the inextricability of the tribute requirement with the abandonment of the gang is a question of law, arguably. That might be a possibility, in which case the board's opinion would receive even less deference. I can't hear you. In which case that issue would be reviewed de novo before this court. In addition, this court had found that in T-Movie Holder, that Nexus is not defeated just because the persecutors did not explicitly mention the individual's specific mental disorder when torturing him. If it were treated as a question of law, would that go too far? I'm sure Ms. Perry's going to say so, but would that mean then that all former gang members, as a matter of law, fell into a cognizable social group? And haven't we hesitated to go that far? In fact, we can't go that far, can we? For Nexus analysis, you would not be able to come up with a rule applying for every single former gang member, because it is very specific to the situation, you know, why the persecutors were motivated. So would it be to go too far if you said all former gang members who left because of religious belief? Would that be going too far? I believe that under the social distinction analysis, it would not be too far to say that this is considered a socially distinct group, but possibly for Nexus because it is so specific to what the facts of the case are. And the facts of our case show that the gang did target Mr. Oliva because he was a former gang member, because they had explicitly stated that on multiple occasions. And as this course stated in T-Movie Holder, there is no clearer evidence of the persecutors' motivations than the statements of the persecutors. If we apply De Novo, would that run up against Chevron, along the lines that Judge Diaz earlier suggested? Yes, Your Honor. However, I believe that the interpretation of the particular social group standard still should be given Chevron deference, but that the facts of our case should be reviewed De Novo, or the application of the standard to our case should be reviewed De Novo. Importantly, this court found that Nexus was not defeated in T-Movie Holder just because the persecutor did not state the specific mental disorder when torturing the individuals. Likewise, MS-13 did tell Mr. Oliva that he was being threatened for leaving the gang, but Nexus is not defeated just because the gang did not specifically say, we are targeting you because you left the gang for moral and religious reasons. It is unrealistic to expect the persecutor to articulate every single element of the particular social group. Nexus does have to be on account of a particular social group, but the court has to look at the evidence to make the factual finding of Nexus, and the board failed to look at all of the evidence. If this court is not able to conclude on the current record that Mr. Oliva is entitled to prevail on his asylum or withholding of removal claims, he requests that this court remand his case to the board. Given that the threat of persecution here is murder, an extremely careful review of this case is crucial. Unless this court has any further questions, I will reserve the rest of my time for rebuttal. Thank you. Thank you. We'll hear from the appellee. Good morning. Margaret Perry for the Attorney General. I just wanted to state that about 35 years ago I last appeared in this court. It was my very first oral argument in an immigration case. There were 12 attorneys doing those cases then and about 200 a year. There are now 250 attorneys and many thousands of these cases. So I'm glad to be back before the Fourth Circuit. In this case, the dispositive issue is the Nexus are on account of issue. Because if the evidence supports and does not compel a contrary conclusion on Nexus, then there's no reason to remand the particular social group claim for that to be decided by the board. Do you have to presuppose finding there's a social group to get into the Nexus issue? Do we have to first determine if the social groups, he was a member of a particular distinct social group? Well, you don't have to because the agency's position is that the reason or motive here was failure to pay the rent, which was disobeying the gang's rules, and wasn't because he left the gang for religious reasons, which is his definition of the social group. So he's defined a social group. He says what it is. But the agency has found that that action that allegedly puts him in the group wasn't the motive for the alleged persecution, which in this case is a claim that he'll be beaten or killed. And the government's position is that the standard of review is compelling evidence. Does the evidence compel a contrary conclusion to the agency? It does not because the direct statements of the people who beat him were that he was being beaten because he failed to pay the rent. He himself testified that that was the reason that he was beaten and that he fears future harm. And as for any inference of deterrence that he may have argued, he's arguing that this might, I think there's an assertion in his affidavit that he was targeted to make him an example for others about not following the gang's rules, but those gang's rules that he contends weren't followed were that he was supposed to pay the rent. So on this case and these facts, given his testimony in the statements of the motive of the people who persecuted him, he's shown only that the motive was failure to pay the rent. I think that in regard to the question about whether or not the court standard of review of this question is sort of de novo in a question of law, or whether this is a factual issue reviewed for compelling evidence, I would refer the court to the Supreme Court's decision in Elias Zacharias, which is a 1992 decision. I believe it's cited in our brief. That is the seminal Supreme Court decision construing what the meaning of on account of persecution, on account of means. It treats the legal standard, or what the legal meaning of the on account of standard is, and what it requires legally, as a question of law, statutory interpretation, that the court reviews de novo. It then, in that decision, applied the compelling evidence standard to see if the evidence met the legal standard. In that case, and they said it was a factual issue. Won't every religious former gang member satisfy the requirement of the statute by refusing or being unable to pay the rent? In other words, I'm having some difficulty understanding why this is a factual question. We know to absolute certainty that if a person doesn't pay the rent, as a former gang member who left for religious reasons, he or she is going to be persecuted. We know that. This record establishes that. And so, there will be some, perhaps, who will pay the rent, and not be persecuted. But, that strikes me as a very bizarre way to interpret the statute. Well, of course. And, of course, there's nothing wrong with interpreting a statute bizarrely. It sometimes happens. But, can you help me just make sense of this? In other words, the question is, as I formulated in my own mind, is, is the failure to pay rent inextricably intertwined with one's former status, for religious reasons, of the gang, as a member of the gang? In the gang's mind, is that, are you asking in the gang's mind or the persecutor's mind, what is their motive here? I mean, because that's, I mean, maybe, I think maybe you're reading it too broadly. Again, you know, the history of the on-account of requirement is that the Supreme Court decided what it meant in Elias Zacharias. Court subsequently came up with a mixed motive analysis, which said you may have several motives. And, as long as one is even at least in part, which might take into, really, describe what you're trying to describe, perhaps. At least in part, on account of, then that's sufficient. And then Congress came back and said, no, that's not sufficient. You have to show that a central reason for the persecution is X. And so, in this case, there's no evidence that the people who beat Mr. Oliva at the time were considering the fact, or knew, this was some nine years after he'd left the gang, knew or considered that he had left for religious reasons. There's nothing to indicate that they cared that he left for religious reasons. They said that they were harming him because he had been paying rent and he stopped paying rent. And since we now have law that requires a parsing of motives and an assessment of what's a central motive versus one that's incidental or tangential. Who else pays tribute? Or rent, which is a word for extortion. Well, the record shows that there are other people who are required to pay extortion. Bus drivers, I put it in a brief. But former gang members are required to pay tribute. Or inactive gang members.  Is there a difference between former and inactive? This court has suggested there's a difference. And the Seventh Circuit has suggested there's a difference. Has the board held that there's a difference? The board hasn't addressed that issue. And I think one of the aspects of this record that hasn't been touched on is that this is a claim of persecution. The alleged social group is the act of being a former gang member who's left without permission, failing for religious reasons. And failing to pay. Yeah, but then his affidavit and testimony doesn't, Mr. Oliva refers to himself as an inactive gang member. Essentially showing that when he joined the gang, he agreed to its rules. It's rules where you're either an active gang member and participate or you can become inactive as long as you pay a tribute. And he became inactive. He failed to pay the tribute. Therefore, he violated the rules. And the gang is going to be persecuting him because of the failure to pay the tribute. This requires, as I say, a parsing of the motives and assessing what are central motives and what are incidental. So is the whole question of religious motivation for abandoning the body, is that open in this case? I thought that that was not open. I think the issue, it's not an issue about whether he left for religious reasons or not. The issue is, is leaving for religious reasons a central motive for them targeting for persecution? And I thought that was not open. But are you suggesting that really is an open factual question in the record? I'm sorry if I'm confusing you. Yes, I'm sorry. So I guess I don't understand the question. Let me actually. You can see, if I understand correctly, the government concedes that the board and the IJ got it wrong on assessment of the social group. You agreed to a reading. It failed to consider all of the evidence, and it has to go back for the board to consider the evidence. Okay. Perhaps I'm reading too much into that concession. So I thought that it was not an open question, that it was a cognizable social group, if all the facts are there. Oh, no, no. Okay. Oh, I'm sorry, no. Okay. No, we didn't concede it's a cognizable social group if all the facts are there. No. You're simply conceding the board didn't correctly assess it. Right. And in fact, right. Now, there is an argument in their reply brief that you ought to find that this, that you ought not to remand because given the evidence. Right. Okay. But the evidence they said. If it went back and the board agreed with the petitioner that under this new standard it is in fact a cognizable social group, then I guess you would then contest the elements of the social group. Is that what I'm getting? Well, so I guess if it went back. Uh-huh. In our view of the case. Right. You'd be sending it back because you would say that the board, the evidence does not, that the evidence compels the conclusion that group membership was a central motive. Does that make sense? We've said, the board has said this isn't a motive. We don't need to, even if this is a social group, the board said, this group wasn't the motive for the harm here. The motive for harm was fairly apparent. And the board did that by disaggregating, if I understand it, the religious motivation for abandoning the gang on the one hand, and the requirement to pay tribute. Or. And my question is, can the board, I don't mean this pejoratively, but can the board really get away with doing that? Well, I'm going to actually use something from your first oral argument. I think that the board said the motive is A, not B. There's no indication that the people who beat him or the people who are threatening him now care about the fact that he left religion. Can they get away with it? And my question is, can the board get away with doing that, given that it is inextricably intertwined, if we accept the petitioner's construct of the group, that the only people who have to pay tribute are the former or inactive members who leave for religious reasons. Or leave for family reasons. No, we're talking about religious reasons. Well, but the evidence is that, I'm sorry. How thinly can the board slice it, I guess is what my question is. Well, and then that gets to whether or not. Ultimate questions of fact take on such a character that we no longer call them questions of fact. They become questions of law subject to de novo review. I'm not saying I'm there, but. Right, right. But when the issue is, what's an incidental motive and what's a central motive, because those are the legal distinctions. Those are the legal distinctions. And that answer is based on the evidence and facts, not the legal standard. Then surely this is a question that's reviewed for how sufficient is the evidence to support the board's assessment. You have an accepted legal standard. It requires fine parsing of what factually in this case was the motive. So the test is the compelling evidence standard. It can't, it's not a generalized or abstract question. I'm struggling to come up with a non-silly hypothetical. But the board couldn't say, I think you agree. The board couldn't say. Petitioners who are Christians. Are different from petitioners who are Christians and go to church every Sunday. Right. Right. So, so there are, there are social groups and attributes of social groups. Subject to persecution. Who, as a matter of law, the board can't slice and dice. Well, and all I'm asking, and it's really a question, not an assertion. All I'm asking is, has the board sliced and diced it too much to the extent the board here has accepted hypothetically the existence of this social group as formulated by the petitioner and then say, oh, but we're going to carve off this piece of petitioners assertion. Because we we find that to be a distinct. Because we because that's not part of that wasn't the motive. They said because that's not what was motivating. That wasn't the purpose, aim or goal. Now, maybe judge what you're getting at. And I don't know is are you. Are you actually sort of raising the issue? Can can the board decide nexus? I see my time is getting. Can the board decide the nexus issue or no nexus without first deciding whether or not there is a group at least on these facts? Well, and again, our our position is it can because you're looking at you're looking at factual motive here. But but that may be the way the the issue you're raising again. Our evidence is that the test on the motive issue is does the evidence compel a conclusion that leading for race or religion that's something to do with it? And it doesn't like to have the benefit of the board's thinking on why it believes it can disaggregate. Former I'm repeating myself, former membership for religious reasons. Why? Why? The board believes it can rationally rationally disaggregate that part of the social definition of social group from the requirement to pay tribute. So that just so that sounds again, that sounds like you may be having questions about whether or not in this case, you can really decide the nexus issue without first deciding the particular social group. Now, we've our position is that goes back and not because there is this is a social group, but because there is there is ambiguous evidence that the boards needs to assess. I suspect our position. I can't speak for the board, but I suspect that evidence doesn't compel a social group. Is the problem here that assessing that first becomes an academic exercise if the petitioner can never make out a nexus requirement in this context? Or is I think Ms. Wang mentioned that there's a possibility that the gang here is a bit more discerning and that they sometimes ferret out those who are not being true believers in terms of their faith or being true family members. And in which case, that would be a reason separate and apart from rent for persecuting that individual. The record indicate there is an affidavit that indicates that people who don't leave for legitimate or sincere religious reasons can be harmed. But that wasn't a contention in this case. That's not being raised at all. My point is that maybe this issue of rent is not inextricably intertwined because there may be other reasons for why an individual may be persecuted. Thank you. Again, I see my time is up. Again, it may also be that, again, Judge Davis, that what you're wrestling with is the leaving for religious reasons, incidental or central. And you don't have an agency decision discussing it in terms of incidental. Now, again, it appears the agency saw it only one way. But if the court feels that that issue was raised and you don't have a decision by the board on that, and it should have assessed, is this incidental versus central, then that would be another reason to remand. I also want to say I disagree with some of the characterizations of the record that were made or Mr. Oliva's testimony or even affidavits about what he was told were the reasons for why he was going to be beaten or the death threats. I think counsel overlooks his affidavits and his testimony very clearly stating that the persecution he fears is beating and or death and that the reason he was beaten and fears this is because he didn't pay the rent. Thank you very much. Thank you. You have a few moments for brief rebuttal if you desire to use it. Thank you, Your Honor. First and foremost, I would like to address the connection between nexus and social distinction. The facts relevant to social distinction are relevant to nexus. Because the board misunderstood the relationship between group membership and the tribute requirement, the board was predisposed to find that nexus was lacking. Furthermore, it is very important that the board, that this court understands that the board missed crucial evidence regarding nexus, that the gang had explicitly stated that Mr. Oliva was targeted because he left the gang. When he was in the United States, he was sent messages stating that if he ever returned to El Salvador, he would be doused in gasoline and burned alive because he left the gang. And local law enforcement officials documented many of these incidents and there was no mention of tribute during any of these calls. In addition, we agree with the judge's suggestion that nexus could be a question of law and that the board spliced the facts of this case to make it about tribute. However, as I explained earlier, Mr. Oliva's requirement to pay tribute is distinguishable from the random acts of extortion against members of Salvadoran society. While the gang might get a small economic benefit from the tribute payment of former gang members, the purpose of tribute is control. And the government inappropriately asked this court to view the evidence regarding tribute in a vacuum. In addition, I would like to explain the difference between rent and tribute. Rent is often used as a problematic translation for renta. However, tribute is an act that is intended to show gratitude, respect, or submission is a much more accurate translation. Although, apologetically in our briefs, we use rent and tribute interchangeably. So it would be some form of extortion? So rent we would see as a form of extortion. However, the gang was not targeting Mr. Oliva for the financial resources that he could provide, but because he was a former gang member who violated the gang's rules. Mr. Oliva sincerely believes that he will be murdered if he is returned to El Salvador, and the immigration judge found him to be credible. The failure of the board to consider all of the evidence regarding both nexus and social distinction, and its failure to analyze social distinction under the proper legal standard, requires that this court either reverse the single member board's decision or amend the case. Thank you. All right. Anything further? Thank you very much for your arguments to this court. We appreciate the services the University of Virginia provided students. Always a pleasure to have a turn on General Hill 2. We'll come down and greet counsel and we'll proceed with the last case.
judges: James A. Wynn, Jr., Albert Diaz, Andre M. Davis